

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ALABAMA

SOUTHERN DIVISION

|  |  |
|---|---|
| ROCKEFELLER F. COOPER, II, | ) |
| PLAINTIFF, | ) |
| V. | ) |
| JEFFERSON COUNTY CORONER | ) CASE NO : 2:17-CV-1997-AKK |
| AND MEDICAL EXAMINER OFFICE, | ) |
| ET AL. | ) |
| DEFENDANT | ) |

## PLAINTIFF'S INTERROGATORIES

Complainant (Rockefeller F. Cooper II, MD) requests that the Agency respond to the following interrogatories. You are required to answer these interrogatories separately and fully in writing, under **OATH**. You are required to respond to these interrogatories no later than thirty (30) calendar days after receipt of these interrogatories, to the undersigned at 3502 Inverness Cliffs Dr., Birmingham, Alabama 35242 and /or electronically at whitekola@hotmail.com as agreed upon with Defense counsel.

1

## INSTRUCTIONS

1. Each Interrogatory is to be answered fully based on information which is in your possession.

2. In each of your answers to these Interrogatories, you are requested to provide not only such information as is in your possession, but also information as is reasonably available. If you are able to provide only part of the information called for by any particular Interrogatory, please provide all the information you are able to provide and state the reason for your **inability** to provide the remainder.

3. If you object to or otherwise decline to answer any portion of an Interrogatory, please provide all information called for by that portion of the Interrogatory to which you do not object or to which you do not decline to answer. For those portions of an Interrogatory to which you object or to which you do not decline to answer, state the reason for such objection or declination.

4. Every Interrogatory herein shall be deemed a continuing interrogatory and information in addition to or in any way inconsistent with your initial answer to such Interrogatory.

5. If any of the following Interrogatories can be answered fully and completely simply by referring to an exhibit number, page, and paragraph of the investigative file compiled by the Agency and furnished to the Complainant by the Agency in connection with this administrative complaint of discrimination, such references, if adequately identified to inform the Complainant as to your response will serve as a satisfactory response to such Interrogatory.

## DEFINITIONS

A. "Plaintiff" means Rockefeller Cooper or a reference as it relates to the interrogatory.

B. Identify," "identifying," and "identification" when referring to a person mean to provide an identification sufficient t notice a deposition of such person and to serve such person with process to require his or her attendance at a place of examination and shall include, without limitation, his or her full name, present or last known address, present or last known business affiliation, home and business telephone number, title or occupation, each of his or her positions during the applicable period of time covered by any answer referring to such person and relationship, if any, to the agency.

C. "Identify," "identifying," and "identification" when used in reference to a writing or document mean to give a sufficient characterization of such writing or document to properly identify it in a request to produce and shall include, without limitation, the following information with respect to teach such document:

1. The date appearing on such document, and if it has no date, the answer shall so state and shall give the date or approximate date such document was prepared;

2. The identity or descriptive code number, file number, title or label of such document;

3. The general nature and description of such document, and if it was not signed, the answer shall so state and shall give the name of the person or persons who prepared it;

4. The names of the person(s) to whom such document was addressed and the name of each person other than such addressee to whom such document or copies of it, were given or sent;

5. The name(s) of the person(s) having present possession, custody, or control of such document(s); and

6. Whether or not any draft, copy or reproduction of such document contains any postscripts, notations, changes or addendum not appearing on the document itself, and if so, the answer shall give the description of each such draft, copy or reproduction.

D. "Relate to," "relating to," "concerning," "pertain," and "pertaining to," mean consisting of, referring to, reflecting or arising out of, evidencing or in any way legally, logically, or factually connected with the matter discussed, directly or indirectly.

E. "Produce" and "provide" mean to provide either a legible true copy of the original or any document and/or communication.

F. "Document," "documents," and "writing" means all records, papers, and books, transcriptions, pictures, drawings or diagrams or every nature, whether transcribed by hand or by some mechanical, electronic, photographic or other means, as well as sound reproductions of oral statements or conversations by whatever means made, whether in your actual or constructive possession or under your control or not, relating to or pertaining to or in any way to the subject matters in connection which it is used and includes originals, all file copies, all other copies, no matter how prepared and all drafts prepared in connection with such writing, whether used or not, including by way of illustration and not by way of limitation, the following; books; records; reports; contracts; agreements; expense accounts; canceled checks; catalogues; price lists; video, audio and other electronic recordings; memoranda (including written memoranda of telephone conversations, other conversations, discussions, agreements, acts and activities); minutes; diaries; calendars; desk pads; scrapbooks; notes; notebooks; correspondence; drafts; bulletins; electronic mail; facsimiles; circulars; forms; pamphlets; notice; statements; journals; postcards; letters; telegrams; publications; inter- and intra- office communications; photostats; photographs; microfilm; maps; drawings; diagrams; sketches; analyses; electromagnetic records; transcripts; and any other documents within defendant's possession, custody or control from which information can be obtained or translated, if necessary, by detection devices into reasonably usable form, i.e. typed in English prose.

G. "Communication" or "communications" means any and all inquiries, discussions, conferences, conversations, negotiations, agreements, meetings, interviews, telephone conversations, letters correspondence, notes telegrams, facsimiles, electronic mail, memoranda, or other forms of communications, including but not limited to both oral and written communications.

H. "Person", "persons," "people", and "individual" means any natural person, together with all federal, state, county, municipal and other government units, agencies or public bodies, as well as firms, companies, corporations, partnerships, proprietorships, joint ventures, organizations, groups of natural persons or other associations or entities separately identifiable whether or not such associations or entities have a separate legal existence in their own right.

In answering these interrogatories, the agency is requested to furnish not only such information as is available to the agency but also such information as is known to any of the agency's agents, representatives, employees, servants, consultants, contractors, subcontractors, investigators, attorneys, and any other person or entity acting or purporting to act on behalf of the agency.

In any matter responsive to any of the interrogatories the agency shall set forth completely the grounds for the asserted privilege, along with copies of the Privacy Act provisions or other written materials upon which such assertion is made. The agency shall identify as to each privileged communication or document:

1. its date;

2. its author(s);

3. the business title or position of its author(s);

4. its recipient(s);

5. the business title or position of its recipient(s);

6. its number of pages;

7. its stated subject matter;

8. the legal basis upon which the agency claims privilege;

9. the specific portion of the interrogatory or document to which the communication or document is responsive.


Documents are to be labeled to indicate the interrogatory to which they respond. In order to simplify the issues and resolve as many matters of fact as possible before hearing, if, following a reasonable and thorough investigation using due diligence, you are unable to answer any interrogatory, or any part thereof, in full, because sufficient information is not available to you, answer the interrogatory to the maximum extent possible, including any knowledge or belief you have concerning the unanswered portion thereof and the facts upon which such knowledge or belief is based. In addition, state what you did to locate the missing information and why that information is not available to you.

When an exact answer to an interrogatory is not known, state the best estimate available, state that it is an estimate, and state the basis for such estimate.

If documents once in your possession or under your control are requested or are the subject of an interrogatory, and such documents are no longer in your possession or under your control, state when such documents were must recently in your possession or under your control, and what disposition was made of them, including identification of the person now in possession of or exercising control over such documents. If the documents were destroyed, state when and where they were destroyed, and identify the person or persons who directed their destruction. All of the following interrogatories shall be continuing in nature until the date of the hearing, and you must supplement your answers as additional information becomes known or available to you.

**\*\*NOTE:**

IF ANY INTERROGATORY OR REQUEST IS OBJECTIONABLE, PLEASE CALL COUNSEL FOR THE COMPLAINANT BEFORE OBJECTING, IN ORDER TO ATTEMPT TO NARROW THE QUESTION OR AVOID THE OBJECTIONABLE PORTION OR ASPECT.

IDENTIFY ALL DOCUMENTS ASSOCIATED WITH EACH INTERROGATORY.

## INTERROGATORIES FROM PLAINTIFF

### A. General Request:

1. Identify the individuals who would be answering or supplying information used in answering the interrogatories.

2. State the name, address, and business telephone number of each person with personal knowledge regarding the facts and circumstances surrounding the happenings of the occurrences referred to in the complaint.

3. State and describe in detail all evidence including documents, affidavits and/or statements not in the Report of Investigation upon which you intend to rely or submit at the hearing.

4. State the names, race, job titles and level of education of each person who worked in the same operational unit as the plaintiff until his termination date.

5. Describe the selection process in step by step detail as to how candidates are evaluated and selected for the subject position and "list" all information relied upon by "selecting officials" in selecting the plaintiff for the **Morgue Technologist's** position.

   A. Please provide copies of exam questions and answers provided by plaintiff and the scores of examinees who took the exam with the plaintiff.

   B. Please state the name, title and address of the individual(s) who derived the exam questions.

6. Identify all individuals who had input into the decision to select the plaintiff for the position as **Morgue Technologist** for Jefferson County Coroners and Medical Examiner's Office.

7. Identify and explain the stated criteria given by the Selecting Official and/or selection panel, either individually or jointly to be used in **selecting** a candidate for the position as Morgue Technologist and "list" in detail all reasons as to why the plaintiff was selected for the said position.

8. Identify all _racially_ **black** employees who have worked in the same operational unit **(Morgue Technologist)** as the plaintiff. If any, set forth:

   A. The name, job title and address of such individual(s);

   B. Their sex and country of national origin,

   C. The term of their employment;

   D. The name, job title and address of their immediate supervisor;

   E. Copies of their probationary evaluations as required by the county.

## B. Employment History of Plaintiff:

9. Make statements for the following information:

   I. The date of hire;

   II. The level of education at the time of being hired;

   III. Each company **(including** defendant employer) by whom employed, and the department or operational unit assigned at the date of hire, with emphasis on forensics (related jobs).

   IV. Whether at any time, the plaintiff had complained about being mistreated or **opposed** to any allegation(s) that he felt was wrongful at the workplace and had identified any **specific** individual(s) who were in the constant habit of doing such within his unit of operation; If so, please state how actions taken to have addressed and resolved those complaints and oppositions.

   V. Whether at any time, the plaintiff had been given notice concerning "legitimate" wrong doings, discharge or termination and if so, the **reasons** for the notice, the final deposition and the date it was generated.

## C. Job Description of the Plaintiff:

10. State whether the plaintiff had a WRITTEN job description, and, if so, set forth the job description, or, if not, DESCRIBE the plaintiff's job duties.

## D. Reasons for Plaintiff's Termination:

11. Describe in detail, at any time where the plaintiff refused to eviscerate the body in accordance with Jefferson County Coroner's Office. If any, set forth:

    A. The name, title and address of the individual(s) who made the report;

    B. The name, title and address of the individual(s) who were present when such occurrence happened;

    C. The sequential steps involved in organ removal as preferred by Jefferson County;

    D. The name, title and address of all individuals who has witnessed the plaintiff eviscerate a body at the said coroner's office;

    E. Documentation of all cases where the plaintiff was task with eviscerating the body without supervision.

12. State the names, phone numbers and addresses of parties involved in the decision-making process to have the plaintiff terminated.

## E. Complaint About Plaintiff's Ability:

13. Until the date when plaintiff stopped working for you, state whether there was ever any complaint relative to the plaintiff's ability to do the work assigned, and if so, described in detail with proof of documentation.

14. State whether the plaintiff's work performance has ever been <u>unsatisfactory</u> and is so, set forth:

   A. The dates or periods with proof during which the plaintiff's performance was allegedly unsatisfactory;
   B. A description of how the plaintiff's performance was unsatisfactory;

   C. Documentation supporting a claim of unsatisfactory performance; and

   D. The name and address of each person having knowledge of allegedly unsatisfactory performance.

15. Describe the plaintiff's preferred method of operation as a whole, so as to address the allegation of "doing work in his own order as opposed to following directions of others".

16. State whether at any point in time, the plaintiff missed any pertinent finding(s) during an autopsy which **may/may not** have compromise the said case. If so, set forth:

   A. Identify the finding(s) missed;
   B. The case number;
   C. The name, title and address of the forensic pathologist in charged;
   D. Documentation as to how the matter was addressed.

17. State whether the plaintiff made any formal opposition or rebuttal to any allegation(s) made against him. If so, set forth:
   A. Describe in detail, the content of his rebuttal or opposition;

   B. The date, name, title and address as to who the rebuttal/opposition was submitted to;
   C. Documents to illustrate how an investigation was carried out regarding the matter and how it was resolved.

18. State whether there were any complaints documented/registered by anyone concerning any alleged unsatisfactory performance identified <u>above</u>, and, if so, set forth for each complaint:
    A.  The date and time of the complaint;

    B.  The name and address of:
        i.   Each person making the complaint;
        ii.  Each person to whom the complaint was made;

    C.  The form of complaint as in verbal and/or written


    **D. Warnings / Counselling:**
19. State with documentation, whether the plaintiff was ever warned or counseled concerning any alleged unsatisfactory performance identified above, and, if so, set forth for each warning or counseling:
    I.    The date and time of the warning or counseling;
    II.   The name and address of each person who participated in the warning or counseling;
    III.  The form of the warning or counseling, be it verbal or written with copy of documentation.

    **E. Standardization of Plaintiff's Work Ethics:**
20. Explain any action(s) as it relates to the plaintiff's work ethics that was considered inappropriate (not in accordance with Jefferson County Coroners and Med. Examiner's Office) and that such inappropriate actions could be **verified** by the **N**ational **A**ssociation of Medical Examiners (**NAME**) and the American Association of Forensic Sciences (**AAFS**) as being unstandardized.


    **F. Hearings:**
21. State whether there were any hearings resulting from any alleged unsatisfactory performance identified above, and, if so, set forth for each hearing:

    A.  The date and time of the hearing;

    B.  The name and address of each person who participated at the hearing;

C. Copies of documents submitted at the hearing

D. Content of the documents

E. Date and time of "post-hearing" **decision** made and

F. Whether there is a transcript/ record of the hearing, and, if so, where it may be obtained.

## G. Relevant Materials:

22. Identify and attach copies of **any/ALL** letters, manuscripts, documents, pictures and/or any written matter relevant to the subject matter of this complaint or which you intend to introduce as evidence. Include **all** documents or exhibits intended for use by the defendant employer company at trial.

    A. State the substance of the facts and opinions about which an expert is expected to testify; and

    B. A summary of the grounds of each opinion.

## H. Bases for Defense:

23. Set forth with particularity, all facts and circumstances upon which you base each one of the separate defenses, cross-claims, counterclaims or claims of indemnification, stating each one separately, and identify all documents which reflect, refer to. Or discuss the allegations of the complaint or the defendant employer company's defenses, cross-claims, counterclaims, or claims of indemnification, and attach copies of each to the answers to these interrogatories.

### I. Personal Handbook/ Policy Manual:

24. For comparative analysis, state whether the defendant employer has a personnel handbook and/or policy manual or other document or series of documents setting forth policies with regards to:

    A. Hiring;
    B. Warnings (verbal and written);
    C. Suspension;
    D. Termination;
    E. The name of the manual;
    F. A description of its contents;
    G. The name and section of the department or operational unit responsible for maintaining and updating the manual;
    H. The name, office addresses and titles of the persons to whom the manual is distributed; and
    I. The name, office addresses, and title of the person who is the custodian of the manual.

### J. Civil Discrimination Complaints:

25. State whether any **complaints** (verbal, written, law suits or any form of complaint by an employee(s) regarding discrimination, hostile work environment, retaliation, etc.) or civil action has **EVER** been filed in any court charging the defendant employer with discrimination or any relating claim (hostile work environment, retaliation, etc). If so, for each complaint, state:

    A. The name and address of the plaintiff;
    B. The date of the complaint;
    C. The venue, address and name of the court where filed;
    D. The nature and substance of the complaint; and
    E. The disposition of the action, or the present status of the action.
    F. Identify and produce all documents concerning such complaints identified in response to Plaintiff's interrogatory and Defendant's response.

### K. Reports of Harassment and Hostile Work Environment:

26. Describe in detail any claims made by the plaintiff about being spoken to harshly and inappropriately in the autopsy suite/Morgue. If any, set forth:

    A. The name, title and address of individual(s) who the claim was made against;

13

B. Documentations stating the rationale behind the plaintiff being verbally abused as it relates to him also being SUBJECTED to a hostile and harsh working environment;

C. The names, titles and addresses of others who have been subject to the above-mentioned hostility or of any kind, if any.

D. Documentation to describe how the matter was addressed to create a more harmonious working environment.

### L. Miscellaneous:

27. Identify any individual(s) who may have served in a direct supervisory role during the absence(s) of the plaintiff's assigned supervisor. If any, set forth:

A. The days of the week when supervisions were carried out;
B. Any documented unsatisfactory work ethics that were carried out by the plaintiff;
C. Working relationship between plaintiff and such individual(s) as mentioned above;
D. Any type of complaint(s) that have been files against such individual(s) by plaintiff;
E. Any documented complaint(s) that such individual(s) received from any forensic pathologist at JCCMEO as it relates to incompetence, inefficiency, misconduct or insubordination. If so:
    1. Please provide a copy;
    2. State date and time such complaint(s) were received;
    3. State the outcome after plaintiff was presented with such complaint(s)
    4. State how was the matter resolved.

28. State the probability or possibility for morgue technologist to make critical errors during an autopsy whiles being quiet and focused as opposed to engaging in non-autopsy related conversations with others in the autopsy suite. Irrespective of the response, set forth:

A. If the plaintiff was ever engaged regarding the above statement;

B. The name, title and address of individuals present at the time of such engagement;

C. The plaintiff's response to such engagement and

D. Any proof presented at any point in time by the plaintiff so as to substantiate the pros of being focused on a case during autopsy.

29. State whether any academic material was ever given to the plaintiff. If so, set forth:

A. The name, title and address of the individual(s) who may have done so;

B. The type and name of the material;

C. The reason as to why such a material was given.

30. State whether the plaintiff was able to recognize any gross pathology during autopsies, be it general or systemic related. If so, set forth:

A. If the plaintiff made any academic engagements and contribution(s) during autopsies by:
   1. Identifying pertinent findings necessary for documentation;
   2. Asking questions of academic relevance

B. The plaintiff's knowledge as it relates to both general and forensic medicine based on discussion of cases with assigned forensic pathologist.

C. How are morgue technologist trained to identify pertinent finding during autopsies?

31. State the days, if any, that plaintiff was late for work. If so, set forth:

    A. Documentation of such occurrences;

    B. Action taken regarding tardiness;

    C. Copy of phone record (CALLS and TEXT MESSAGES) from supervisor to show whether contact was made to justify legitimate tardiness by plaintiff;

    D. Copy of Plaintiff's **PAY-SLIP/ TIME CARD** for the week ending on Feb. 5, 2017;

    E. Copies of time cards of other morgue technologist working at the same time as plaintiff covering the past five (5) years.

    F. The possibility of having the same types of cases several days in a row based on MANNER of death.

32. Explain the correlation between the written reprimand that was served the plaintiff by supervisor Julianna Dufek on March 13, 2017 and the tape recording that was done in her office with the plaintiff on the same day. If any, set forth:

    A. The representation of Dr. Brandi McClesky in both references;

    B. The level of consistency being portrayed by Supervisor Dufek;

    C. Documented testimony from RESIDENT DOCTOR Joseph Dweaga who was mentioned as a witness by Dufek;

    D. Documented testimony from FELLOW DOCTOR Brandi McClesky who was accused by plaintiff of authorizing him to open the body.

33. Describe in detail up to enclosing the body after an autopsy, the steps involved in the evisceration process of the human body and the rationale behind each step. As it relates to Jefferson County Coroner and Medical Examiner Office, set forth:

   A. The name, title and address of the individual(s) responsible for putting these steps in place;

   B. The outcome of a case if these steps are not followed;

   C. If defense employer has always been accredited by the **NAME** (**N**ational **A**ssociation of **M**edical **E**xaminers).

   D. If NAME can substantiate that any deviation from steps provided would compromise the procedure and outcome of an autopsy in any way or cause detrimental effects such as health hazards, toxicological deficits, etc.

34. Describe in detail, the step taken for securing samples from a decedent for toxicological analysis. If any, set forth:

   A. Documents stating the following with emphasis to signed copies or acknowledgement by the plaintiff:

      1. The samples collected for toxicology analysis;

      2. The equipment /tools used in performing such a task;

      3. The way toxicology samples are collected;

      4. Challenges that could arise with obtaining toxicology samples;
      A. How to overcome such challenges.

      B. What is the **SOP** (**S**tandard **O**perating **P**rocedure) if non or some toxicology sample cannot be obtained.

      5. Steps taken to ensure that toxicology results are not compromised;

B. Documentation to support allegation of plaintiff not being able to obtain toxicology samples. If any, set forth:

    1. The specific case(s);

    2. The type of case as it relates to MANNER of death;

    3. Basis on which plaintiff was unable to obtain toxicology sample(s) and

    4. Measures that were taken to address such deficit (inability to obtain toxicology samples) as it relates to policy manual for the operational unit.

35. Describe in sequence, the series of events that took place on March 21, 2017 in the autopsy suite which lead to Dr. Davis instructing the plaintiff to scan x-ray films until his return from a meeting. If any, set forth:

    A. Documented date, time and location of the dispute in relation to the above statement;

    B. The name, job title and address of all individuals present in the morgue during the dispute which lead to Dr. Davis assigning the plaintiff to a different job task;

    C. Date, time and location as to where plaintiff was given the said instruction;

    D. What transpired at the said location prior to the instruction given;

    E. The name, job title and address of the individual(s) present at the time when the plaintiff was being reassigned;

    F. The name, job title and address of all individuals who knew about the reassignment;

    G. The name, job title and address of all individuals present at the time plaintiff re-entered the morgue;

    H. The comments being made prior to the plaintiff re-entering the morgue;

    I. For comparative analysis purposes, the exact documented threat that was made by plaintiff to Mr. Barry Franklin.

36. State the policy on a morgue technologist being able to request working on "selective" cases. If any, set forth:

    A. Any previously assigned case (s) that plaintiff was not allowed to work;

    B. Detailed explanation as to why plaintiff was not allowed to work such case(s);

    C. The name, title and job description of individuals present at the time of such occurrence.

37. State the policy as it relates to a current morgue technologist obtaining gainful employment at a non-related institution with non-conflicting hours of work as it relates to working hours at JCCMEO. If any, set forth:

    A. Documentation to support such policy;
    B. The name, job title and address of the individual(s) who are responsible for maintain such policy manual;
    C. The action taken by JCCMEO when it was known that the plaintiff had another job;
    D. The type of job being held by the plaintiff;
    E. The date when such discovery was made;

38. Explain in detail how an employee could possibly **abandon** "work" in the autopsy suite. If so, set forth:

    A. The dates, time and individuals present when the plaintiff abandoned his place of work;

    B. Description of the autopsy/morgue related areas during and right after a case or case;

C. Documentation as to how various task are assigned on any given day within the said operational unit;

D. With documentation, the job task that was/were deserted by the plaintiff and what action did the supervisor in charge take at the point when the plaintiff was abandoning the work area;

E. The policy on charging phones with the use of USB PORTS on the computers in the operational unit.

39. Identify all individuals at the plaintiff's place of work, who may have had a work-related interaction with him that can be used to corroborate the relevant claims made which lead to his termination. If any, set forth:

A. Detail documentation as to what may have transpired;
B. State the names, race and job titles of the said individual(s) making the corroboration as mentioned above;
C. The names, race and job titles of the other individual(s) who were present when such event took place;
D. Detailed documentation as to how the matter was addressed.

40. Describe in detail at any given time where the plaintiff was instructed to make phone call(s) to a funeral home(s) for case related matters. If so, set forth:

A. The name, title and address of the individual(s) who instructed the plaintiff to so;

B. Documentation stating:

      i.      The assigned number to the case(s);
      ii.     The name of the decedent(s);
      iii.    The name of the funeral home(s);
      iv.    The rationale behind the said call(s) being made.

## CERTIFICATE OF SERVICE

I hereby certify that on May 8, 2018, I submitted an electronic copy of this document to Atty. F. Brady Rigdon at rigdonb@jccal.org as agreed upon by both parties.

Respectfully Submitted,

_____

Rockefeller F. Cooper II, MD
Plaintiff

Date: May ___ 2018

3502 Inverness Cliffs Dr.
Birmingham, AL 35242
* 334-233-9274